UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────────────

JEFFREY PAQUETTE,

                Plaintiff,

        v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

                Defendant.

───────────────────────────────────────

**REPORT AND
RECOMMENDATION**

12-CV-1470
(TJM/VEB)

## I. INTRODUCTION

In March of 2009, Plaintiff Jeffrey Paquette applied for disability insurance benefits under the Social Security Act. Plaintiff alleges that he has been unable to work since January of 2008 due to physical and psychological impairments. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, by and through his attorneys, Conboy McKay Bachman & Kendall, LLP, Lawrence D. Hasseler, Esq., commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On October 2, 2013, the Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

---

[1]On February 14, 2013, Carolyn W. Colvin took office as Acting Social Security Commissioner. The Clerk of the Court is directed to substitute Acting Commissioner Colvin as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

## II. BACKGROUND

The procedural history may be summarized as follows:

On March 9, 2009, Plaintiff applied for benefits under the Social Security Act, alleging disability beginning January 31, 2008. (T at 108).[2] The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held in Watertown, New York, on July 15, 2010, before ALJ Elizabeth Koennecke. (T at 30). Plaintiff appeared with his attorney and testified. (T at 34-64).

On September 14, 2010, ALJ Koennecke issued a written decision finding that Plaintiff was not disabled within the meaning of the Social Security Act and denying his claim for benefits. (T at 6-27). The ALJ's decision became the Commissioner's final decision on September 10, 2012, when the Social Security Administration's Appeals Council denied Plaintiff's request for review. (T at 1-5).

Plaintiff, by and through counsel, timely commenced this action by filing a Complaint on September 25, 2012. (Docket No. 1). The Commissioner interposed an Answer on January 7, 2013. (Docket No. 7). Plaintiff filed a supporting Brief on February 21, 2013. (Docket No. 10). The Commissioner filed a Brief in opposition on May 7, 2013. (Docket No. 13).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

---

[2]Citations to "T" refer to the Administrative Transcript. (Docket No. 8).

[3]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

For the reasons below, it is recommended that Plaintiff's motion be granted, the Commissioner's motion be denied, and this case be remanded for further proceedings.

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. <u>See</u> 42 U.S.C. §§ 405(g), 1383(c)(3); <u>Wagner v. Sec'y of Health & Human Servs.</u>, 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. <u>Johnson v. Bowen</u>, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); <u>see</u> <u>Grey v. Heckler</u>, 721 F.2d 41, 46 (2d Cir.1983); <u>Marcus v. Califano</u>, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. <u>See</u> <u>Rutherford v. Schweiker</u>, 685 F.2d 60, 62 (2d Cir.1982).

The Commissioner has established a five-step sequential evaluation process to

determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could

---

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.     Analysis**

**1.     Commissioner's Decision**

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 31, 2008 (the alleged onset date) and met the insured status requirements under the Social Security Act through December 31, 2012. (T at 11).  The ALJ found that Plaintiff had the following "severe" impairments, as defined under the Social Security Regulations: mild degenerative disease of the hands; degenerative disease of the right shoulder; a mood disorder; and a substance abuse disorder. (T at 11-12). The ALJ determined that Plaintiff's medically determinable impairments did not meet or equal one of the impairments listed in Appendix I of the Regulations (the "Listings"). (T at 12-13).

The ALJ concluded that Plaintiff retained the residual functional capacity to perform light work as defined in 20 CFR §404.1567 (b), but was limited to work that did not require very fine repetitive manipulation. (T at 13-21).  The ALJ determined that Plaintiff could understand, carry out, and remember simple instructions; respond appropriately to supervision, co-workers and usual work situations; and deal appropriately with changes in a routine work setting. (T at 14).

The ALJ found that Plaintiff could not perform his past relevant work as a sales person for a building supply company. (T at 21).  However, considering Plaintiff's age (46 years old on the alleged onset date), education (high school), and RFC (light work, limited as outlined above), the ALJ concluded that there were jobs that exist in significant numbers

in the national economy that Plaintiff could perform. (T at 21-22).

Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as that term is defined under the Act, from the alleged onset date (January 31, 2008) through the date of the ALJ's decision (September 14, 2010), and was therefore not entitled to benefits. (T at 22-23). As noted above, the ALJ's decision became the Commissioner's final decision on September 10, 2012, when the Appeals Council denied Plaintiff's request for review. (T at 1-5).

### 2.    Plaintiff's Claims

Plaintiff argues that the Commissioner's decision should be reversed.  He offers four (4) main arguments.  First, Plaintiff contends that the ALJ did not properly assess the severity of his arthritis and Crohn's Disease.  Second, he argues that the ALJ failed to properly weigh the medical evidence.  Third, Plaintiff challenges the ALJ's credibility determination.  Fourth, he argues that the ALJ's step five analysis was flawed.  This Court will address each argument in turn.

### a.    Severity of Impairments

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No.

07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999)(quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

In this case, the ALJ found that Plaintiff had the following severe impairments: mild degenerative disease of the hands; degenerative disease of the right shoulder; a mood disorder; and a substance abuse disorder. (T at 11-12).   Plaintiff alleged that he also suffers from Crohn's disease, but the ALJ found no evidence of a positive diagnosis for this condition. (T at 12).   Plaintiff also claimed that his arthritis was a severe impairment.   The ALJ noted evidence of treatment for arthritis in multiple joints, but found that it was a non-severe impairment. (T at 12).   Plaintiff challenges these findings.

The record documents Plaintiff's consistent complaints of frequent diarrhea, but his medical providers were unable to definitively diagnose Crohn's Disease. (T at 293).   A colonoscopy and test of the lining of Plaintiff's esophagus were normal except for a hiatal

hernia. (T at 293). In May of 2009, Dr. Harbinder Toor, a consultative examiner, opined that Plaintiff's frequent diarrhea would interfere with his ability to maintain a routine. (T at 372). In December 2009, Dr. Ryan Tyler, Plaintiff's treating physician, reported that the chronic diarrhea was "[p]robably irritable bowel syndrome" and described Plaintiff's symptoms as "stable." (T at 433). In October of 2010 (after the ALJ rendered her decision), Dr. Tyler diagnosed irritable bowel syndrome and opined that Plaintiff would need to go to the bathroom between 6 and 12 times per day because of diarrhea. (T at 537).

Plaintiff consistently complained of pain in his knees, shoulders, and heels. In November of 2008, Dr. Tyler assessed "[p]robable rheumatoid arthritis." (T at 293, 299). However, Plaintiff reported significant improvement with the use of Relafan, a prescription drug. (T at 432). X-rays of the lumbar spine and knees showed minimal or no abnormalities. (T at 458-59, 460-61, 464). Dr. Tyler diagnosed rheumatoid arthritis and multijoint osteoarthritis and assessed fine motor limitations arising from joint pain and arthritis. (T at 535, 537).

This Court is inclined to view the ALJ's findings with regard to the severity of Plaintiff's bowel condition and arthritis as erroneous. Whether Plaintiff had Crohn's disease or irritable bowel syndrome, he clearly had a condition that caused frequent, sudden diarrhea. The consultative examiner acknowledged that this condition would impact (at least to some degree) Plaintiff's ability to maintain a regular work schedule. (T at 372). With respect to arthritis, the ALJ's conclusion that Plaintiff was limited with regard to performing certain fine motor activities is consistent with a conclusion that Plaintiff's arthritis is severe. Dr. Toor assessed fine motor difficulty and joint pain, along with musculoskeletal limitations. (T at 533).

However, because the ALJ found that Plaintiff had established other impairments considered severe under the Act and continued with the sequential analysis, any errors in her findings at step two of the analysis were harmless. See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987)("[T]he Secretary found that Maziarz suffered from the severe impairment of coronary artery disease, status post right coronary artery angioplasty and angina pectoris. Accordingly, the Secretary continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."); McCartney v. Commissioner of Social Sec., Civil Action No. 07-1572, 2009 WL 1323578, at *16 (W.D.Pa. May 8, 2009)("Even if the Court was to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments."); Portorreal v. Astrue, No. C.A. 07-296ML, 2008 WL 4681636, at *3 (D.R.I. Oct. 21, 2008).

**b.    Assessment of Medical Evidence**

Plaintiff challenges the ALJ's assessment of several pieces of medical evidence. This Court will address each piece of evidence in turn.

### i.    Dr. Harbiner Toor

On April 17, 2009, Dr. Harbiner Toor, a consultative examiner, completed a "Physical Assessment for Determination of Employability" form checklist.   Dr. Toor assessed fine motor difficulty and joint pain, along with musculoskeletal limitations. (T at 533).  He opined that Plaintiff was limited to walking 1-2 hours, standing 1-2 hours, sitting for 2-4 hours, and using his hands for 2-4 hours. (T at 534).

On May 1, 2009, Dr. Toor completed an internal medicine examination report.  He assessed that Plaintiff would likely have "moderate difficulty standing, walking, squatting, bending, and lifting." (T at 372).  He opined that Plaintiff had moderate fine motor limitations and should avoid heavy exertion. (T at 372).

Dr. Toor did not note any limitation with regard to sitting in his May 2009 report.  The ALJ interpreted the absence of a finding as evidence that "there should be no sitting limitations . . . ." and cited Dr. Toor's May 2009 report in support of this conclusion. (T at 19). However, in his April 2009 checklist report, Dr. Toor opined that Plaintiff was "moderately limited" with regard to sitting and could only sit for 2-4 hours at a time. (T at 534).  The ALJ did not reconcile his no sitting limitation finding with Dr. Toor's April 2009 assessment.

The ALJ discounted the balance of Dr. Toor's assessment by making the curious comment that the consultative examination "was for disability purposes where it was in [Plaintiff's] best interest to appear in the worst light." (T at 19).  Of course, this might be the case with many consultative examinations and the opinions of consultative examiners are routinely afforded substantial weight in Social Security disability cases.  Further, the ALJ

discounted Dr. Toor's assessment because of handwritten notes in the margins of the April 2009 report, which notes were apparently made by Plaintiff after the fact. (T at 19). This was not a sound basis for discounting the opinion, as it is readily apparent which comments were added and which comments represent the opinion of Dr. Toor. Moreover, if the ALJ had any question as to whether some portion of the report represented Dr. Toor's opinion, she should have re-contacted him. Accordingly, this Court finds several errors in the ALJ's assessment of Dr. Toor's opinions.

### ii.    Mr. Jonathan Scott Blankenbush

In July of 2010, Jonathan Scott Blankenbush, LCSW, a treating social worker, completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) form. Mr. Blankenbush assessed a mild limitation with respect to Plaintiff's ability to understand, remember, and carry out simple instructions; moderate limitation as to Plaintiff's ability to understand and remember complex instructions; and marked limitation with respect to his ability to make judgments on complex work-related decisions. (T at 525). Mr. Blankenbush also assessed marked limitations as to interacting appropriately with the public and moderate limitations with respect to interacting with supervisors and co-workers, as well as responding appropriately to changes in a routine work setting. (T at 526).

The ALJ gave "no weight" to this assessment because Mr. Blankenbush is a social worker and is thus not considered a "treating source" under the Regulations. (T at 20). This was error. Although the assessments of social workers are not entitled to enhanced weight

as "medical opinions,"[5] these assessments are nevertheless "important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006); see also White v. Comm'r, 302 F. Supp.2d 170, 174-76 (W.D.N.Y.2004) (reversing where the ALJ failed to give appropriate weight to the plaintiff's social worker, who had a regular treatment relationship with the plaintiff and whose diagnosis was consistent with the treating psychiatrist); Pogozelski v. Barnhart, No. 03-CV-2914, 2004 WL 1146059, at *12 (E.D.N.Y. May 19, 2004) (finding that "some weight should still have been accorded to [the therapist's] opinion based on his familiarity and treating relationship with the claimant"); Allen v. Astrue, 05-CV-0101, 2008 WL 660510, at *9 (N.D.N.Y. Mar.10, 2008) (remanding because ALJ did not evaluate the treating therapist's opinion); Bergman v. Sullivan, No. 88-CV-513, 1989 WL 280264, *3 (W.D.N.Y. Aug. 7, 1989) (holding that treating social worker is "a non-medical source whose opinion concerning the nature and degree of plaintiff's impairment is not only helpful, but critically important, since he is the only treating source").

Indeed, "[b]ased on the particular facts of a case, such as length of treatment, it may be appropriate for an ALJ to give more weight to a non-acceptable medical source than a treating physician." Anderson v. Astrue, No. 07-CV-4969, 2009 WL 2824584, at *9 (E.D.N.Y. Aug, 28, 2009).

This Court is mindful of the fact that the Second Circuit has stated that "the ALJ has

---

[5]The Social Security Regulations provide that "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of ... impairment(s)...." Diaz, 59 F.3d at 313 (citing 20 C.F.R. § 404.1527(a)(2)). Section 404.1513(a) lists five categories of "acceptable medical sources," none of which mentions social workers. Rather, therapists and social welfare agency personnel are expressly listed in a separate section, under "other sources" whose "[i]nformation ... may ... help us to understand how [the] impairment affects your ability to work." Id. (citing 20 C.F.R. § 404.1513(e) (1994)).

discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him." Diaz v. Shalala, 59 F.3d 307, 313-14 (2d Cir.1995). However, it was an abuse of that discretion for the ALJ to reject Mr. Blankenbush's assessment purely on the grounds that he is a social worker. Mr. Blankenbush was Plaintiff's primary mental health provider and saw him frequently between February 2009 and March 2010. (T at 474, 485, 487, 488, 489, 490, 493, 494, 495, 496, 497, 498, 499, 500, 503, 505, 507, 510, 511, 512, 514, 517, 522). His opinion should have been weighed more carefully and was entitled to at least some weight.

Moreover, Mr. Blankenbush's opinion was consistent with the findings of Dr. Jeanne Shapiro, a consultative psychiatric examiner. In May of 2009, Dr. Shapiro examined Plaintiff and assessed that he could understand and follow simple instructions and directions, but might have difficulty consistently maintaining attention and concentration. (T at 367). Dr. Shapiro also opined that Plaintiff might find it difficult to regularly attend to a routine and maintain a schedule, to deal adequately with stress, and to make appropriate decisions, (T at 367).

The ALJ does not appear to have considered the consistency of Dr. Shapiro's findings with Mr. Blankenbush's opinion. Indeed, the ALJ said that she gave "weight" to Dr. Shapiro's opinion (T at 21), but did not specify how much weight or indicate whether or how she incorporated the consultative examiner's assessment, including (in particular) her findings regarding Plaintiff's difficulties with stress. This was also error.

"Because stress is 'highly individualized,' mentally impaired individuals 'may have difficulty meeting the requirements of even so-called 'low-stress' jobs,' and the Commissioner must therefore make specific findings about the nature of a claimant's

stress, the circumstances that trigger it, and how those factors affect his ability to work." Stadler v. Barnhart. 464 F. Supp.2d 183, 189, 464 F. Supp.2d 183 (W.D.N.Y. 2006)(citing SSR 85-15; Welch v. Chater, 923 F. Supp. 17, 21 (W.D.N.Y.1996) ("Although a particular job may appear to involve little stress, it may, in fact, be stressful and beyond the capabilities of an individual with particular mental impairments")).

Accordingly, the assessment of the treating social worker, and the larger question of the impact of Plaintiff's mental impairments on his ability to perform basic work-related activities, should be revisited on remand.

### iii.    Dr. Elizabeth Pierson

Dr. Elizabeth Pierson, a treating psychiatrist, completed a psychiatric evaluation in February of 2010. She diagnosed major depressive disorder, recurrent, unspecified. (T at 529). Dr. Pierson gave Plaintiff a Global Assessment Functioning ("GAF") score of 60 (T at 530), which indicates only moderate difficulty in social or occupational functioning. See Anderson v. Astrue, No. 07-CV-4969, 2009 WL 2824584, at *3 n.3 (E.D.N.Y. Aug. 28, 2009); Snyder v. Astrue, No. 07-CV-0763, 2009 WL 3381556, at *2 n.2 (N.D.N.Y. Oct. 16, 2009)("A GAF of 51 to 60 signifies 'moderate symptoms (e.g., flat affect and circumstantial speech occasional panic attacks) or moderate difficulty in social, occupational or school functioning (e .g., few friends, conflicts with peers or co-workers).'")(quoting Diagnostic and Statistical Manual of Mental Disorders-IV-TR, p. 34).

The ALJ cited this report in support of her RFC findings. (T at 20). Plaintiff faults the ALJ for failing to consider a supplemental report prepared by Dr. Pierson on November 29, 2010. Plaintiff's criticism is valid, but misplaced. The November 2010 report was prepared

and provided after the date of the ALJ's decision, which was rendered in September 2010. As such, the ALJ cannot be faulted for having failed to consider it. However, the report *was* submitted to the Appeals Council, which did not adequately address it.

The Social Security Administration's Appeals Council is required consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); see also § 416.1470(b); Perez v. Chater, 77 F.3d 41, 45 (2d Cir.1996). The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b); see § 416.1470(b). "

Even if "the Appeals Council denies review after considering new evidence, the [Commissioner]'s final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." Perez, 77 F.3d at 45. Accordingly, the additional evidence becomes part of the administrative record reviewed by the district court. Id. at 45-46. The role of the district court is to review whether the Appeals Council's action was in conformity with these regulations. See 42 U.S.C. § 405(g) (sentence five); see, e.g., Woodford v. Apfel, 93 F.Supp.2d 521, 528 (S.D.N.Y.2000) (concluding that the "Appeals Council erred when it determined that [the new] evidence was insufficient to trigger review of the ALJ's decision").

Dr. Pierson's November 2010 report is highly significant. She opined that Plaintiff would have moderate limitation with respect to his ability to make judgments on simple work-related decisions and marked limitation with regard to making judgments on complex work-related decisions. (T at 540). Dr. Pierson reported that Plaintiff had increased anxiety and irritability with changes in environment and routine and difficulty interacting with others.

(T at 540).  In particular, she found moderate difficulties in interacting appropriately with the public and marked limitation as to interacting appropriately with supervisors and co-workers. (T at 541).  Dr. Pierson also assessed marked limitation with respect to responding appropriately to usual work situations and to changes in a routine work setting. (T at 541).

The Appeals Council concluded, without further explanation, that this report did not "provide a basis" for changing the ALJ's decision. (T at 2).  This explanation was inadequate.

"[W]here newly submitted evidence consists of findings made by a claimant's treating physician, the treating physician rule applies, and the Appeals Council must give good reasons for the weight accorded to a treating source's medical opinion." James v. Commissioner of Social Security, No. 06-CV-6180, 2009 WL 2496485, at *10 (E.D.N.Y. Aug. 14, 2009).   The Second Circuit has said "the Appeals Council [has] an obligation to explain the weight it g[ives] to the opinions of [a treating physician]." Snell v. Apfel, 177 F.3d 128, 133-34 (2d Cir.1999)(holding that the Commissioner "is required to explain the weight it gives to the opinions of a treating physician"); 20 C.F.R. § 404.1527(d)(2) ( "We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

"Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell, 177 F.3d at 134; see also; Shrack v. Astrue, No. 3:08-CV-00168, 2009 WL 712362, at *3 (D.Conn. Mar. 17, 2009)("Importantly, the treating physician rule applies to the Appeal's [sic] Council when the new evidence at issue reflects the findings and opinions of a treating physician.").

16

Here, the Appeals Council not only failed to provide "good reasons" for disregarding Dr. Pierson's November 2010 opinion, it did not provide any reasons at all. Moreover, Dr. Pierson's November 2010 report was significantly different than her February 2010 assessment, which the ALJ relied on in support of her decision. Given the ALJ's reliance on the prior report, some explanation was necessary as to why the dramatically different latter report did not provide a basis for believing the ALJ might reach a different decision. It was error to dismiss the report without any explanation and without re-contacting Dr. Pierson to explain the disparity.

The Commissioner responds to this issue by claiming that Dr. Pierson's November 2010 was properly dismissed because it post-dated the ALJ's decision. The Commissioner's argument is contrary to Second Circuit authority expressly holding that "medical evidence generated after an ALJ's decision cannot deemed irrelevant solely because of timing." Newbury v. Astrue, 321 Fed.Appx. 16, 2009 WL 780888, at *2 n.2 (2d Cir. Mar. 26, 2009)(citing Pollard v. Halter, 377 F.3d 183, 193 (2d Cir.2004)). The categorical refusal to consider evidence solely because it was created after the date of the ALJ's decision is an error. Pollard, 377 F.3d at 193 ("Although the new evidence consists of documents generated after the ALJ rendered his decision, this does not necessarily mean that it had no bearing on the Commissioner's evaluation of [the Claimant's] claims. To the contrary, the evidence directly supports many of her earlier contentions regarding [the] condition. It strongly suggests that, during the relevant time period, [her] condition was far more serious than previously thought"); see also Sergenton v. Barnhart, 470 F. Supp.2d 194, 204 (E.D.N.Y. 2007). Moreover, the report post-dates the ALJ's decision by less than three months and there is no indication that it addresses limitations that developed or were

17

materially aggravated during the brief interval following the decision.

As such, a remand for reconsideration of Dr. Pierson's November 2010 opinion is required.[6]

### c. Credibility

A claimant's subjective complaints are an important element in disability claims, and must be thoroughly considered. See See Ber v. Celebrezze, 332 F.2d 293, 298, 300 (2d Cir.1964). Further, if claimant's testimony regarding pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F. Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

---

[6]On remand, the Appeals Council should also address the October 2010 checklist provided by Dr. Ryan Tyler, in which he opined that Plaintiff would need to visit the restroom between 6 and 12 times a day because of diarrhea and suffered from pain and soreness in multiple joints that increased with activity. (T at 537). This treating physician opinion was also not addressed in any detail by the Appeals Council. The ALJ concluded that Plaintiff's diarrhea (either related to irritable bowel syndrome or Crohn's disease) was not a severe impairment. This assessment should be reviewed in light of Dr. Tyler's October 2010 report.

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v.

Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified as follows: He attend school through the tenth grade, but received a GED. (T at 35). He was previously found to be disabled for several years and received benefits, but attempted to work thereafter. (T at 35). He had difficulties with work stress and interactions with co-workers. (T at 40). Plaintiff estimates that he could lift 10 to 20 pounds and sit or stand for about 30 minutes at a time. (T at 47). Walking is limited to approximately half a mile. (T at 47). He does not handle stress or anxiety very well. (T at 48). Joint pain and frequent, sudden bowel movements are significant issues. (T at 48, 51). He also experiences hand and wrist pain that increases with repetitive motion. (T at 50). He has bouts of crying and feelings of isolation at least 3 or 4 times a week, with occasional suicidal thoughts. (T at 57-58).

The ALJ found that Plaintiff's allegations were not "credible, supported by, or consistent with the record as a whole." (T at 20-21). The ALJ's credibility assessment was flawed.

First, the ALJ faulted Plaintiff for being "not truthful" when he told a treating source that he was honorably discharged from the military. (T at 20). In fact, a document submitted to the Appeals Council shows that Plaintiff was, in fact, honorably discharged from the United States Navy in December of 1979. (T at 237).

Second, the ALJ found that Plaintiff's deer hunting suggested an ability to exert more than he alleged. (T at 20). However, Plaintiff testified that the activity was limited and was becoming more difficult. (T at 60). On his most recent trip, Plaintiff stood less than a hundred years from his vehicle and relied on his father and brothers to perform all activities requiring exertion. (T at 61). The ALJ found that Plaintiff had "minimized" his hunting

activity, but the basis for this conclusion is not clear. Moreover, it was error for the ALJ to infer an ability to perform the demands of competitive, remunerative employment on a sustained basis from the ability to perform occasional, light recreational activity with assistance from family members. See Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012)("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as she would be by an employer. *The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.*")(citations omitted)(emphasis supplied).

Third, the ALJ discounted Plaintiff's credibility concerning his frequent, sudden bowel movements, finding this testimony unsupported by the record. (T at 21). This, again, shows the Appeals Council's error in summarily dismissing the new evidence submitted by Plaintiff after the ALJ's decision, which included a report from Dr. Tyler, the treating physician, that Plaintiff would need to use the restroom between 6 and 12 times a day because of diarrhea. (T at 537). The report undermines the ALJ's decision to discount Plaintiff's credibility as to this aspect of his testimony. Further, Dr. Toor, a consultative examiner, opined that Plaintiff's frequent diarrhea would interfere with his ability to maintain a routine. (T at 372).

Fourth, the ALJ's failure to properly evaluate the medical evidence, as outlined above, impacted his assessment of Plaintiff's credibility. The opinions provided by Dr. Toor, Mr. Blankenship, and Dr. Pierson were consistent with many of Plaintiff's allegations and Plaintiff's credibility should have been considered in that light.

As such, the question of Plaintiff's credibility should be revisited on remand.

### d.   The Grids

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was summarized in Zorilla v. Chater, 915 F. Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting,

standing, walking, lifting, carrying, pushing, and pulling." <u>Id.</u> at 667 n. 2; <u>see</u> 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. <u>See</u> <u>Pratts v. Chater</u>, 94 F.3d 34, 39 (2d Cir.1996); <u>Bapp v. Bowen</u>, 802 F.2d 601, 604-605 (2d Cir.1986).

In this case, the ALJ used the Grids in reaching her disability determination. (T at 22). As the Second Circuit explained in <u>Pratts v. Chater</u>, the applicability of the Grids is determined on a case-by-case basis. <u>Pratts</u>, 94 F.3d at 39 (citing <u>Bapp</u>, 802 F.2d at 605-06). When nonexertional impairments are present, the ALJ must determine whether those impairments "significantly" diminishes the claimant's work capacity beyond that caused by his or her exertional limitations. <u>Id.</u> A claimant's work capacity is "'significantly diminished' if there is an 'additional loss of work capacity . . . that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" <u>Id.</u> (quoting <u>Bapp</u>, 802 F.2d at 606).

The ALJ concluded that Plaintiff has no significant limitations with regard to the performance of the basic mental demands of work. (T at 22). This finding should be reconsidered. As outlined above, evidence submitted to the ALJ (i.e. the assessments of Dr. Shapiro and Mr. Blankenbush) and to the Appeals Council (Dr. Pierson's November 2010 opinion) provide good reason for questioning the conclusion that Plaintiff has no

significant limitations in the performance of the basic mental demands of work. In addition, Dr. Tyler's October 2010 report provides a basis for reconsidering the ALJ's findings with respect to Plaintiff's frequent and sudden bowel movements, which would provide a further limitation with respect to Plaintiff's ability to perform basic work activities. "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15. "A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." Id.

Accordingly, the step five analysis should likewise be reviewed on remand.

### 3.    Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008). Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

### IV. CONCLUSION

This Court recommends that Plaintiff be GRANTED judgment on the pleadings, that

the Commissioner's motion for judgment on the pleadings be DENIED, and that this case be remanded for further proceedings.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   December 6, 2013

       Syracuse, New York

**V. ORDERS**

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION**

**WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge


Dated:   December 6, 2013

         Syracuse, New York